(No. 23814.—

JACOB GROSSBERG, Appellee, *vs.* NATHAN HAFFENBERG *et al.*
Appellants.

*Opinion filed October 15, 1937—Rehearing denied Dec. 8, 1937.*

SLOTTOW & LEVITON, (CHARLES LEVITON, and HAROLD
P. SHANE, of counsel,) for appellants.

FOLSOM, GROSSBERG, BUTLER & BRILL, for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:
This appeal brings up for review a decree of the circuit
court of Cook county determining the rights of two part-
ners in certain real estate. Appellant Nathan Haffenberg
and the appellee, Grossberg, practiced law as partners in
Chicago from March 1, 1917, until December 1, 1920, when
the firm was dissolved by mutual consent. Thereafter,
until 1925, they occupied the same office by a special agree-
ment which is not material to this review. The appellee
contended that certain real estate in the city of Chicago
was acquired by Esther Ruth Haffenberg, wife of Nathan
Haffenberg, in consideration of fees earned by the partners
and that she, therefore, held it for use of the firm. Four
different parcels of land are involved, one of them known
as the "Hopp" property and the other three as the "Gertz"
properties. On a hearing before a master in chancery to

whom the cause was referred, it was found that both the Hopp and the Gertz properties were acquired in consideration of fees earned by the partners and that both were held by Esther Ruth Haffenberg for the benefit of the firm, and that the complainant, Grossberg, who is the appellee here, had an interest in these properties and was entitled to an accounting with respect thereto. Exceptions to the master's report were sustained by the chancellor as to the Gertz property, but overruled as to the Hopp property, and a final decree was entered, finding that appellant Esther Ruth Haffenberg held the Hopp property in trust for the firm, but held the Gertz property, in fee simple, in her own right. The Haffenbergs have appealed as to the Hopp property and Grossberg has assigned cross-errors as to the Gertz property. The Haffenbergs are represented in this court by counsel other than those who represented them in the trial court.

There is no important question of law involved in the case and the voluminous record of more than 2400 pages has been so poorly abstracted as to make it very difficult to comprehend the contentions of the parties. As we have repeatedly stated, we will not search the record for the purpose of trying to find some reason for reversing a decree by a chancellor. There is no testimony of any importance, by anyone except the parties themselves, bearing on the narrow questions as to the exact means and methods of acquiring these titles. Many witnesses, who might have thrown some further light on the points, were not called to testify by anyone, nor was their absence explained. We are left in the same position as the chancellor, confronted with highly conflicting testimony and an unusual amount of animosity on both sides. The Gertz property seems to have been acquired by Esther Ruth Haffenberg in 1919, for a substantial consideration and the title to it, or, at least, the title opinion of the Chicago Title & Trust Company, appears, without question, to have been examined by

Grossberg. It is also apparent that he represented Mrs. Haffenberg in some litigation concerning the tenancy and collection of rents thereon. No sufficient reason appears from the abstract or briefs for us to upset the considered opinion of the chancellor, and the cross-errors will therefore be overruled.

It is equally clear that the chancellor was right in his rulings as to the Hopp property. Title to this was first taken by the firm in payment for fees and was deeded to the partners, as individuals. Thereafter, at the suggestion of Nathan Haffenberg, the partners joined in a conveyance to Haffenberg's nephew, who worked in the office and who was unmarried. Haffenberg explained this request to place title in his nephew by suggesting that the nephew was unmarried and that a sale of the property could readily be negotiated and quickly consummated through this method of handling. The evidence is such that the chancellor was justified in finding that this was a ruse and was part of a plan on Haffenberg's part to obtain the property. Almost immediately after Haffenberg's nephew got the title, he conveyed it to Mrs. Haffenberg without Grossberg's knowledge, and although it is contended that Mrs. Haffenberg made some payments to the firm in return for the title, the evidence is not clear either as to the amount, time or purpose of these payments. The chancellor was fully justified in believing that these payments, if actually made, were inadequate and that the entire transaction was a plan to overreach Grossberg. Mrs. Haffenberg is fully chargeable with knowledge of everything that her husband did in this matter, as she testified he was acting as her agent with full authority to transact the business as he might see fit. Many contradictions and inconsistencies in Nathan Haffenberg's testimony justified the chancellor in disregarding such parts of it as were not self-serving.

Each partner owes to each other partner the utmost good faith, and when he, himself, benefits from transac-

tions with the firm, he will be required to show, not only that he is within the law, but that his conduct conforms to the highest standards of honor and honesty. (*Roby* v. *Colehour,* 135 Ill. 300.) The relationship between partners is one of trust and confidence and when it appears, as it does here, that one of the partners has indirectly obtained property from the firm, he must rebut the presumption of fraud by clear and convincing evidence showing that he has acted in good faith, and has not betrayed the confidence reposed in him. (*Suchy* v. *Hajicek,* 364 Ill. 502; *Masterson* v. *Wall,* 365 id. 102.) The defendant has not denied that the property in question came to the firm for legal services. It now stands in his wife's name through the conveyance above noted. He has not met the burden imposed upon him by the rules of law above stated, and the chancellor arrived at the right conclusion.

An accounting remains to be had between the partners in this case, and our affirmance of the decree does not mean the end of the litigation. Both principal parties to this suit are officers of this court and the public interest requires that they should conclude this litigation speedily, that we may avoid appearance of vexatious and unreasonable litigation carried on by two members of our own department of government. Twenty-four hundred pages of testimony have been taken and a high percentage of it is waste material. The record is filled with useless, long-drawn out and highly technical objections to evidence. On final decree, the chancellor will make use of his power to tax costs in such a way as to place the burdens of this litigation where an examination of the record may disclose them to justly belong.

The decree of the circuit court will be affirmed.

*Decree affirmed.*